# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| JASON EDWARD EDDINGTON, | : | CIVIL ACTION NO. 3:17-1666 |
|---|---|---|
| Plaintiff | : | (JUDGE MANNION) |
| v | : | |
| YORK COUNTY PRISON, et al., | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

On September 15, 2017, Plaintiff, Jason Edward Eddington, an inmate formerly confined[1] in the York County Prison, York, Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1, complaint). He complains of incidents which occurred at his former place of confinement, the York County Prison. Id. The named Defendants are PrimeCare Medical, Inc., Margaret Smith, CRNP (incorrectly identified as "Physicians Assistant, Jane Doe, (MAGGIE)), and Sandra Sackett, PA-C (incorrectly identified as "Physicians Assistant, Jane Doe, (SANDY)); Physicians Assistant John Doe; Warden Mary Sabol; Maintenance Manager

---

[1] Plaintiff is currently housed in Wernersville Community Corrections Center, Wernersville, Pennsylvania.

John McCoy; Maintenance Worker John Doe; and York County Prison. Id.

Defendants filed two separate motions to dismiss, on November 9, 2017 and December 20, 2017, pursuant to Federal Rule Civil Procedure 12(b)(6), arguing that Plaintiff's action should be dismissed for Plaintiff's failure to properly exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). (Docs. 15, 26).

On April 25, 2018, in accordance with Paladino v. Newsome, 885 F.3d 203 (3d Cir. Mar. 16, 2018), (holding that the District Court shall provide the parties notice that it will consider exhaustion in its role as fact finder under Small v. Camden Cty., 728 F.3d 265 (3d Cir. 2013), this Court issued an Order, converting Defendants' motions to dismiss to motions for summary judgment and allowing the parties an opportunity to supplement the record with supporting evidence relevant to the exhaustion of administrative remedies. (Doc. 31).

On May 15, 2018, Defendants PrimeCare Medical, Inc., Margaret Smith, and Sandra Sackett, filed a motion for summary judgment, (Doc. 36) which supercedes and therefore renders moot their November 9, 2017, motion to dismiss.

Defendants' motions have been fully briefed, and are ripe for

disposition. For the reasons set forth below, the Court will grant Defendants' motions for summary judgment.

**II. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of

Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

## III. **Statement of Facts**

Plaintiff states that "on September 30, 2015, while confined on the premises of the York County Prison's Immigration Wing, I-C-4, Bund Bed #8, awaiting a Civil Forfeiture Proceeding, the Plaintiff was surprisingly sprayed directly into the eyes and face by another inmate with a liquid disinfectant cleaning chemical substance that was supplied and distributed to all Housing Units by the York County Prison Maintenance Department for inmates unsupervised use." (Doc. 1). Plaintiff claims that "after [his] eyes and face were sprayed with said chemical, Plaintiff's eyes and face began to burn severely, causing extreme pain." Id. He then "requested from the duty Correctional Officer (identity unknown), to be immediately sent to the York County Prison Medical Department for the above said injuries, and was told

by this said Corrections Officer, that the Medical Department was too busy tonight and that Plaintiff must wait." Id. Also, "Plaintiff requested to receive a Grievance Form from this same said Corrections Officer and was told by this Corrections Officer that there were not any Grievance Forms on the Housing Unit available." Id.

On September 30, 2015, the Plaintiff "used carbon paper and handwrote his own Grievance complaining of these above said facts." Id. Specifically, Plaintiff's Grievance read as follows: "Attn: Warden Sabol, While using the rest room I was sprayed in the eyes and face with cleaning chemicals and my eyes are burning very bad. I asked the C/O to send me to the medical but he refused. When I asked for a Grievance he told me that he did not have any. Please help." (Doc. 1-1 at 6, Grievance). Plaintiff claims to have "hand delivered, submitted, and filed that emergency handwritten grievance with the on-duty Corrections Officer, believing that the on duty Corrections Officer would recognize the Plaintiff's immediate emergency needs and concerns and get the Plaintiff the immediate emergency medical care and treatment required and necessary for Plaintiff's said injuries." (Doc. 44).

On October 1, 2015, at 11:49 a.m., Plaintiff was seen by Nurse Practitioner Margaret Smith. (Doc. 48-1, Medical Record). Plaintiff reported

the following:

> Plaintiff stated that he had something in his eye last night. Stated he kept rubbing it. He stated that he was getting discharge. Plaintiff stated that he also looks like he has something in eye. Plaintiff stated his sight is fine. He also stated it was scratchy, but had little discharge from that eye.

Id. Plaintiff was assessed as having conjunctivitis, conjunctival irritation. Id. He was then given Natural Tears and Polymyxin eye drops, to place in his right eye for five days, was instructed to try not to touch it and to follow-up in five days. Id.

On October 5, 2015, at 8:54 a.m., Plaintiff was again seen by Nurse Practitioner Smith for his follow-up. Id. Plaintiff reported that he "believes from touching it now has conjunctivitis." Id. He started using Polytrim drops and stated "it is improved now" with "slight amount of drainage." Id. Plaintiff was assessed as having conjunctivitis and was directed to continue Polytrim drops as ordered and to follow-up in seven days." Id.

On October 12, 2015, at 10:05 a.m., Plaintiff was seen for his follow-up by Physicians Assistant Sandra L. Sackett. Id. Plaintiff reported the he "has redden conjunctiva for several weeks, was given natural tears and no relief, then ordered ab ointment and still no relief, now he is almost 1 month and still burning and stinging." Id. Plaintiff was assessed with "redden conjunctiva

swollen lids." Id. He was directed to be seen in the afternoon, for a follow-up, by Dr. Bene. Id.

On October 12, 2015, Plaintiff was seen by Dr. Bene at the York Eye Institute. (Doc. 44 at 25). Dr. Bene's report to York County Prison reveals the following:

> Jason Eddington presents with red painful OU with burning and swelling and blurred vision for about 2 wks. Since getting a cleaner spritzed in eyes.
>
> **Impression:**
> Chemical burn OD Moderate - OS Moderate 10/12/15
> Corneal-Keratitis Other OD Moderate - OS Moderate 10/12/15
>
> **Discussed with Patient:** The patient has the best corrected visual acuity of 20/200 and 20/200 in the OD and OS respectively. Anterior and dilated posterior segment examinations were remarkable for chemosis, staining and injection. Sulfacetamide and Pred Forte were prescribed OU. Follow up in 3 days...
>
> Thank you for allowing us the opportunity to share in the care of this patient. Please feel free to contact me if I can provide any further information that would be helpful to you.

Id.

On October 15, 2015, Plaintiff was seen at York Eye Institute for a follow-up. (Doc. 44 at 44). Plaintiff was examined, and the following was noted:

> **Impression:**
> Chemical burn OD Moderate - OS Moderate 10/12/15

Corneal - Dry Eye Syndrome OD Severe - OS Severe 10/12/15
Corneal-Keratitis Other OD Moderate - OS Moderate 10/12/15

**Discussed with Patient:** Continue current treatment. Add in preservative free ATs qlh OU. F/u on Monday with Dr. Bene. Id.

Id.

On October 19, 2015, Plaintiff was again seen by Dr. Bene at the York Eye Institute. (Doc. 44 at 47). Dr Bene noted the following:

Jason Eddington presents with a chemical burn 4 day FU.

**Impression:**
Chemical burn OD Moderate - OS Moderate 10/12/15
Corneal - Dry Eye Syndrome OD Severe - OS Severe 10/12/15
Corneal-Keratitis Other OD Moderate - OS Moderate 10/12/15

**Discussed with Patient:** The patient has the best corrected visual acuity of 20/60 and 20/60 in the OD and OS respectively. Anterior and dilated posterior segment examinations were remarkable for improvement in visual acuity and chemical keratitis OU. Continue present regimen and follow up in 7-10 days.

**DES:** Discussed findings of today's exam with patient. Discussed appropriate treatment with patient. Discussed that this is a chronic problem. All questions answered to the patient's satisfaction.

Id.

Plaintiff was seen for a follow-up visit with Dr. Bene on October 28, 2015. (Doc. 44 at 52). Plaintiff was examined and "improvement of the visual acuity" was again noted. Id. Plaintiff was directed to "continue present regimen and follow up in 1 month." Id.

On November 27, 2015, Plaintiff was seen by Dr. Bene for his one month follow-up. (Doc. 44 at 57).

On September 15, 2017, Plaintiff filed the instant civil rights action, in which he seeks compensatory and punitive damages from the named Defendants for deliberate indifference, cruel and unusual punishment, negligence, failure to protect, and for failure to adequately train. (Doc. 1).

An April 28, 2018 review of Plaintiff's grievances, revealed that Plaintiff filed fifty-two (52) grievances at the York County Prison between August 20, 2012 and October 20, 2015. (Doc. 33-1 at 58). Twenty-four of Plaintiff's grievances addressed medical issues. Id. The following three grievances are the only grievances filed in 2015 that relate to medical concerns:

> - 9/12/15 (Inmate complaint regarding the discontinuation of 2.0 shaker order);
> - 8/15/15 (Inmate is requesting 2.0 supplement drinks);
> - 7/19/15 (Inmate is requesting a bottom bunk order, two piece jumpsuit for medical reasons as well as medical diet)

Id. There are no grievances filed past September 12, 2015, that concern medical issues. Id. In fact, the only grievance filed after September 12, 2015, was filed on October 20, 2015, in which Plaintiff requested a phone call. Id. (Doc. 33 at 58). There is no grievance of record concerning a September 30, 2015 incident in which Plaintiff was allegedly sprayed in the face and eye with

a cleaning disinfectant by another inmate and/or his alleged failure to receive proper medical care and treatment following the alleged incident. Id.

## IV. Discussion

Section 1997e(a) of title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. §1983; Woodford v. Ngo, 548 U.S. 81,92 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 548 U.S. at 93. "Proper exhaustion demands

11

compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 92. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the York County Prison. The York County Prison has a comprehensive administrative grievance procedure which provides for an administrative review of institutional grievances. (See Doc. 33-1 at 158). The inmate Complaint Review System (CRS) or "801" is intended as a formal and objective review of complaints by residents at the York County Prison in order to remedy specific situations and help identify procedural problem areas at the institution. Id.

Inmate complaints are to be in writing, submitted on a standardized "801" form and directed to the Complaint Coordinator.[2] The Complaint

---

[2]The York County Handbook also provides:

Please submit completed grievances to a housing unit officer,

Coordinator shall then conduct an investigation into the complaint and shall provide a form to all staff members or other individuals mentioned in the complaint so that they may report their involvement with the complainant. Staff members are to respond to the Complaint Coordinator within forty-eight (48) hours of receipt of the form. Within ten (10) days of receipt of the complaint, the Complaint Coordinator will issue a summary and recommendation ("802"), which shall be delivered to the Deputy Warden for Treatment, with copies to the complainant and all staff members mentioned

---

>counselor, or a supervisor or place them in the grievance box on your housing unit. When you submit your grievance form you may keep the yellow copy for your records.
>
>4. Grievances will be forwarded to the Grievance Coordinator everyday excluding weekends and holidays for resolution. You will normally receive a response with ten (10) business days from the date it was received. If your grievance requires investigation, the response time may take longer.
>
>5. You are required to follow the rules of the grievance process. If you fail to comply with the following you will be issued a grievance rejection form noting the reason your grievance was rejected. You will be directed to submit another type of form or resubmit the grievance form with your errors corrected. Grievances will be rejected for the following reasons:
>
>>a. Failure to utilize a procedure established to resolve your complaint that is not the Inmate Grievance System. . . .

(See Doc. 33-1 at 49).

in the complaint. If no objection is timely filed, the report and recommendation will be implemented. An inmate who is dissatisfied with the recommendation of the Complaint Coordinator may file an objection, ("804"), with the Deputy Warden for Treatment within five (5) days after the issuance of the Complaint Coordinator's report. Id.

Upon receipt of an objection, the Deputy Warden shall issue a decision. An inmate shall receive a response ("805"), from the Deputy Warden within twenty-one (21) days from the receipt of the appeal. If dissatisfied with the decision of the Deputy Warden, the complainant has three days to file a "Request for Solicitor Review" form ("806") from the Deputy Warden so that an appeal may be submitted to the County Solicitor for his review. The solicitor will review the 806 and prepare a response to the inmate. The County Solicitor may recommend a review of the grievance by the Complaint Review Board. If the inmate is not satisfied with the Solicitor's review of his case or the decision of the Complaint Review Board, he has thirty (30) days within which to file an appeal for final review by the York County Prison Board. Id. The grievance procedures further provide that the grievance system "shall not be considered exhausted unless all reviews and appeals have been taken on time and denied". Id.

Since there is no dispute that a grievance system exists, Eddington must use it before filing suit. The York County Prison records reveal that no grievance was ever received from Plaintiff. However, even accepting Plaintiff's allegations as true, while, by his own admission, he started the grievance process, by hand delivering his grievance to the Correctional Officer on duty, he failed to finish the grievance process. To the extent that Eddington submitted a grievance to the appropriate official and did not receive a response, the procedure contemplates several tiers of review and the grievance review system is not exhausted when an inmate files a grievance and then takes no other action through established channels when a grievance is not resolved to his satisfaction. His next step would have been to appeal the Grievance Coordinator's decision, or lack of one, to the Deputy Warden of Treatment. The record before the Court demonstrates no evidence of this. Thus, all competent evidence of record in this case demonstrates that Eddington simply failed to properly exhaust administrative remedies.[3] The

---

[3] Moreover, in addition to failing to follow the proper procedural channels of exhaustion, Plaintiff grievance fails to conform to the proper form. Plaintiff's grievance fails to identify any of the named Defendants or claims against them. In fact, Plaintiff references only an unidentified Correctional Officer, and claims against him. Specifically, that Plaintiff requested grievance forms from him, and for the Correctional Officer to allow Plaintiff to go to the medical department, and was denied. There is no reference to any named Defendant

15

failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In Spruill, supra, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, the record clearly discloses that Eddington failed to exhaust his administrative remedies with respect to his deliberate indifference, cruel and unusual punishment, and failure to protect and train claims. In fact, the record demonstrates that Plaintiff allegedly prepared his "grievance" prior to any interaction he had with the named Defendants. The law is clear that Plaintiff is required to exhaust his administrative remedies before he files any action with respect to all of his claims. Booth v. Churner, 532 U.S. 731, 739 (2001); Woodford v. Ngo, 548 U.S. 81, 92 (2006) (mandating complete

---

or any unconstitutional action they engaged in. This is most likely due to the fact that Plaintiff's grievance was drafted prior to the date of the claims raised in Plaintiff's complaint against the named Defendants.

16

exhaustion of all administrative remedies before filing suit); see also Rivera v. Pa. Dep't of Corr., 388 Fed. App'x 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies prior to filing a civil action in federal court"). Thus, Eddington has sustained a procedural default with respect to the claims raised herein.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Eddington offers no evidence to justify his failure to comply with DOC requirements. Consequently, he is now foreclosed from litigating his remaining claims in this Court.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner

17

lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to enter judgment in favor of Defendants. An appropriate order will be issued.

## V. Conclusion

Based upon the undisputed facts of record, Defendants are entitled to summary judgment for Plaintiff's failure to adequately exhaust administrative remedies with respect to the claims raised in the instant action.

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 2, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-1666-01.wpd